**Certiorari Denied, November 15, 2010, No. 32,655**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-001**

**Filing Date:  September 23, 2010**

**Docket No.  28,565**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**VINCENT CANDELARIA,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**KENNEDY, Judge.**

**{1}**     We hold in this case that officers, informed that the owner of a car observed under suspicious circumstances had a suspended driver's license, have reasonable suspicion to initiate a traffic stop.  Subsequent events during the stop permitted an expansion of the scope of the stop without creating a constitutional problem.  We therefore affirm the denial of

1

Defendant's motion to suppress.

**BACKGROUND**

**{2}**     Both arresting officers testified at the suppression hearing and, despite minor conflicts in their testimony, the facts on which the district court relied are undisputed. On the evening of November 2, 2005, Officers Sullivan and Gutierrez of the Albuquerque Police Department were patrolling in Albuquerque's Westgate neighborhood. As the two passed the Westgate baseball fields, they noticed two vehicles in the parking lot: a Monte Carlo driven by Defendant Vincent Candelaria and a white pickup truck. Officer Gutierrez recognized the Monte Carlo from a previous investigation. Police pulled into the parking lot and, upon doing so, both vehicles sped away. Police chose to follow the Monte Carlo. They ran a search on the license plate that indicated the car was owned by Michael Martinez, and a subsequent search of Martinez's driving record revealed that his driving privileges had been suspended. Concluding Martinez was the driver of the Monte Carlo, Officers Sullivan and Gutierrez pulled it over.

**{3}**     Officer Sullivan approached on the driver's side, and Officer Gutierrez approached on the passenger side. Upon seeing Defendant, Officer Sullivan became aware that he was not, in fact, the owner of the car. As Officer Sullivan testified, based on a "prior law enforcement-related setting . . . I knew he was not . . . Martinez." Nevertheless, Officer Sullivan continued the detention and asked Defendant to produce his driver's license, along with vehicle registration and proof of insurance. Defendant cooperated and, while doing so, stated he had been stopped earlier in the day by police while in possession of a firearm. Concerned for his safety, Officer Sullivan asked Defendant to step out of the car so he could conduct a pat-down for weapons, and Defendant complied. The search revealed that Defendant was unarmed.

**{4}**     As these events took place, Officer Gutierrez approached the vehicle on the passenger side and inspected the passenger compartment from the outside. On the back seat, Officer Gutierrez saw an empty handgun holster, a wallet full of cash, and a box of ammunition. Both windows of the vehicle were down, and Officer Gutierrez smelled the odor of marijuana emanating from inside. When Officer Sullivan completed his pat-down search of Defendant's person, Officer Gutierrez asked Defendant "if he was smoking marijuana in the car." Defendant replied that he had smoked marijuana six hours earlier in the day. The officers then asked Defendant's permission to search the vehicle, and Defendant consented both verbally and in writing. After discovering illegal drugs hidden under the car's center console, police arrested Defendant. They found no gun in the vehicle.

**{5}**     A grand jury indicted Defendant on August 17, 2006, for drug trafficking and possession of drug paraphernalia, and Defendant filed a motion to suppress the evidence gathered during the stop. He argued the stop was improper because police could not have predicated their detention of him on their conclusion that Martinez was the driver of the car based solely on the fact that he was its owner. In the alternative, presuming the validity of

2

the stop, Defendant contended police failed in their duty to terminate the stop the moment they ascertained that Martinez was not the driver.

**{6}** The district court convened a hearing on February 22, 2007, and after considering the testimony of Officers Sullivan and Gutierrez and the arguments of counsel, the court denied Defendant's motion. Entering extensive written findings of fact and conclusions of law, the court concluded: (1) the initial stop was supported by the reasonable suspicion that Martinez, an unlicensed driver, was operating the vehicle; and (2) the officers' subsequent interactions with Defendant met constitutional standards as they led up to Defendant's voluntary consent to the police search.

**{7}** Defendant pleaded guilty to trafficking a controlled substance in violation of NMSA 1978, Section 30-31-20 (1990) (amended 2006), on the condition that he could reserve his right to appeal the motion to suppress. On appeal, he reasserts his arguments made before the district court. He argues, first, that the initial stop was unsupported by reasonable suspicion and, second, that his continued detention exceeded the scope of the officers' suspicion once they became aware that no traffic violation had occurred. We discuss each.

**STANDARD OF REVIEW**

**{8}** Motions to suppress present mixed questions of law and fact. *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. We review them in two steps. *Id*. First, we assess the district court's findings of fact in the light most favorable to the prevailing party and ensure that those findings are supported by substantial evidence. *Id*. ¶ 18 (reviewing courts "do not sit as a trier of fact [because] the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses") (alteration in original) (internal quotation marks and citation omitted). Second, we consider de novo whether the disputed police activity was reasonable given the totality of the circumstances. *Id*. Such inquiries extend beyond fact-finding, and we abide by the principle that "appellate courts [are] to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context[.]" *Id.* (internal quotation marks and citation omitted). Accordingly, any inferences made by the district court pursuant to its findings of fact are likewise reviewed de novo. *Id*.

**DISCUSSION**

**{9}** The constitutions of both the United States and New Mexico prohibit unreasonable searches and seizures. U.S. Const. amend. IV; N.M. Const. art. II, § 10. This Court has held that "[a] traffic stop constitutes a seizure of the vehicle and its occupants." *State v. Rubio*, 2006-NMCA-067, ¶ 11, 139 N.M. 612, 136 P.3d 1022. We analyze whether such a seizure is reasonable, first, according to whether the initial stop was valid and, second, according to "whether the officer's actions . . . were reasonably related in scope to the circumstances that initially justified the stop." *Id*. As the situation develops, officers may expand an investigation to answer any new reasonable and articulable suspicions that arise during the course of their lawful activity. *State v. Romero*, 2002-NMCA-064, ¶ 10, 132 N.M. 364, 48 P.3d 102.

3

**{10}** In order to validly stop an automobile, police officers must possess, at a minimum, reasonable suspicion that a law has been violated. Such suspicion arises only when officers can detect "specific articulable facts . . . that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Vandenberg*, 2003-NMSC-030, ¶ 21 (alteration in original) (internal quotation marks and citation omitted). It is not enough for police to rely upon "[u]nsupported intuition [or] inarticulate hunches." *Id.* (internal quotation marks and citation omitted). Any questions asked by police officers during the course of a stop must be either reasonably related to the reason for the stop or supported by reasonable suspicion. *State v. Duran*, 2005-NMSC-034, ¶ 34, 138 N.M. 414, 120 P.3d 836.

## A. The Initial Stop

**{11}** Defendant argues police possessed no reasonable suspicion to stop him. We disagree. At the time he was pulled over, police knew only that the Monte Carlo was registered to Martinez, whose license had been suspended. Thus, Defendant argues, to conclude based on such information that Martinez was the driver represents an unreasonable leap of logic and could not have given officers individualized, particularized suspicion to believe Defendant had broken the law. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. The issue is one of first impression in New Mexico, but it is somewhat common in other jurisdictions. Therefore, we look to those jurisdictions for guidance.

**{12}** At least two jurisdictions have issued opinions supporting Defendant's argument. *See State v. Cerino*, 117 P.3d 876, 878 (Idaho Ct. App. 2005); *Holly v. State*, 888 N.E.2d 338, 341 (Ind. Ct. App. 2008), *vacated by* 918 N.E.2d 323 (Ind. 2009). In *Cerino*, for instance, police stopped the vehicle driven by the defendant with knowledge that it was: (1) registered to a male who did not possess an Idaho driver's license, and (2) driven by a male. 117 P.3d at 877. "In these circumstances," the court concluded, "there was little basis to infer that the male registrant was driving; it was as plausible and perhaps more likely, that the driver was someone else." *Id.* at 878. People frequently drive vehicles registered in the names of others, under a variety of legal circumstances; and so, as the court held, "the mere observation of a vehicle being driven by someone of the same gender as the unlicensed owner is insufficient to give rise to a reasonable suspicion of unlawful activity." *Id.* Any other result "would endorse the sort of arbitrary invasions of personal liberty and privacy that the Fourth Amendment [was] designed to hold in check." *Id.* What is more, it would allow officers to troll for vehicles driven by anyone matching the gender of an unlicensed, registered owner. *Id.* This view, however, represents but a small minority. In fact, *Cerino* is the only case we have found in this regard that still bears the force of law.

**{13}** In contrast, an overwhelming majority of jurisdictions hold that police have reasonable suspicion to effect a stop when the registered owner's license is suspended. *See, e.g.*, *Vill. of Lake in the Hills v. Lloyd*, 591 N.E.2d 524, 526 (Ill. App. Ct. 1992) (holding that knowledge that the owner's license was revoked constituted reasonable suspicion for the stop); *State v. Tozier*, 905 A.2d 836, 839 (Me. 2006) (finding that the registered owner's revoked license supported reasonable suspicion); *Commonwealth v. Muckle*, 814 N.E.2d 7,

4

11 (Mass. App. Ct. 2004) (holding that suspension of a registered owner's driving privileges provides an objective basis for a stop); *State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996) (concluding that "[w]hen an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator"); *State v. Halvorson*, 997 P.2d 751, 753 (Mont. 2000) (stating that knowledge that the vehicle's owner had a revoked license satisfied reasonable suspicion); *State v. Richter*, 765 A.2d 687, 689 (N.H. 2000) (holding that without any evidence to the contrary, it is reasonable to infer that the driver of a vehicle is also its registered owner); *State v. Hess*, 648 S.E.2d 913, 916-17 (N.C. Ct. App. 2007) (holding that absent evidence to the contrary, an officer may reasonably conclude that the driver is also the registrant); *State v. Penfield*, 22 P.3d 293, 294 (Wash. Ct. App. 2001) (concluding that a statute is constitutional where it allows police to stop any vehicle registered to an owner with a suspended license); *see also* 4 Wayne R. LaFave, Search and Seizure § 9.5(d) (4th ed. 2009) ("[A]bsent additional facts suggesting otherwise, on grounds to arrest the registered owner of a specific vehicle, there exists a reasonable suspicion the present driver is the registered owner to justify a stop and inquiry.").

{14}     The North Carolina Court of Appeals most recently considered this question in *Hess*. There, the court surveyed a host of authorities and held, "because [the police] knew [the d]efendant was the owner . . . and that [the d]efendant's license had been suspended, it was reasonable for [the police], in the absence of evidence to the contrary, to infer that [the d]efendant was driving the automobile." 648 S.E.2d at 917. The court concluded, "our research reveals that when an officer knows that a vehicle being operated is registered to an owner with a suspended or revoked driver's license, the majority of jurisdictions have held that an officer has reasonable suspicion to make an investigatory stop, absent evidence that the driver is not the owner." *Id*. at 916. The court considered the possibility that the actual driver of the vehicle could be someone other than the owner. Even still, "it is reasonable for an officer to suspect that the owner is driving the vehicle, absent other circumstances[.]" *Id*. (internal quotation marks and citation omitted). We agree with the Massachusetts Supreme Court when it held that, "[t]he standard of reasonable suspicion does not require that an officer exclude all possible innocent explanations of the facts and circumstances." *Commonwealth v. Deramo*, 762 N.E.2d 815, 818-19 (Mass. 2002) (internal quotation marks omitted).

{15}     Our holding should come as no surprise. Indeed, New Mexico's civil law has long recognized a presumption that, in the absence of evidence to the contrary, the registered owner of a vehicle is that vehicle's driver. *Trujillo v. Chavez*, 93 N.M. 626, 631, 603 P.2d 736, 741 (Ct. App. 1979). *Trujillo* considered a civil jury instruction in a dispute involving an automobile accident. This Court held that the instruction, as given, failed to properly inform the jury as to the defendant's burden. *Id*. We recommended the following instruction as a legally sufficient alternative:

> Because the evidence is undisputed that [the decedent] was the owner of the car in which he was riding at the time of the accident, you must find that [the decedent] was the driver unless [his] estate has proved that it is more

5

probable that he was not driving than that he was driving.

*Id*. (internal quotation marks omitted). A similar logic applies to reasonable suspicion in the traffic stop context. When police observe a vehicle registered to an owner whose license has been suspended, it is reasonable to conclude that the driver is the registrant—that is, until officers become aware of facts to contradict their assumption. The concept of reasonable suspicion has always embraced a certain degree of uncertainty. In the case before us, because Officers Sullivan and Gutierrez were aware of no facts to contradict their inference that Martinez was driving the car for which he was the registered owner, we follow the approach of the majority of jurisdictions and hold that police possessed reasonable suspicion to affect a traffic stop.

**{16}** In a closely-related argument, Defendant contends pursuant to *Jason L.* that police did not possess "particularized suspicion, based on all the circumstances that *a particular individual, the one detained*, is breaking, or has broken, the law." 2000-NMSC-018, ¶ 20 (emphasis added). Applying only that sentence to the facts of this case, Defendant's conclusion seems almost plausible, since upon stopping the car, police quickly determined he was not Martinez. Nevertheless, Defendant's narrow application of *Jason L.* ignores the constitutional standard we must apply in vehicle stop cases. *See State v. Bolton*, 111 N.M. 28, 32, 801 P.2d 98, 102 (Ct. App. 1990) (concluding that officers may not detain a vehicle unless they "have probable cause, or at least reasonable suspicion, to believe that the *vehicle or its occupants* are subject to seizure" (emphasis added)). In the case before us, police reasonably believed the registered owner of the vehicle, Martinez, who had a suspended driver's license, to be the driver of the Monte Carlo. Thus, they possessed reasonable suspicion to believe that the vehicle, as well as its occupant, Martinez, were subject to seizure. *See id*.

**B.     Scope of the Subsequent Investigation**

**{17}** Defendant next argues that Officers Sullivan and Gutierrez should have sent him on his way the instant they discovered he was not the registered owner. He contends that "nothing in the court's findings of fact . . . indicate[s] that criminal activity was afoot." We disagree. Several facts relied upon by the district court contradict Defendant. Furthermore, at each step of the investigation, the actions of Officers Sullivan and Gutierrez met constitutional muster.

**{18}** After conducting a valid traffic stop, police approached Defendant's vehicle and asked for his driver's license, registration, and proof of insurance. Such inquiries do not implicate a suspect's Fourth Amendment rights. As stated in *State v. Reynolds*, "individuals have no legitimate subjective expectation of privacy in their license, registration, or insurance documents when they are operating a motor vehicle and an officer requests to see such documents." 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995). As long as the vehicle has been validly stopped, for whatever reason, police may always ask the driver to produce them. *Id*. at 384, 890 P.2d at 1316. In fact, as long as the original stop is supported by reasonable suspicion, police may legally request such documents even after the original suspicion evaporates. Such was the case in *Vandenberg*, where police stopped the defendant's vehicle because of an improperly affixed

6

rear license plate. 2003-NMSC-030, ¶¶ 40-42. As the officer approached the vehicle, however, he determined that the plate was, in fact, legally displayed. *Id.* ¶ 40. Yet, he proceeded to ask the driver for license, registration, and proof of insurance. Our Supreme Court, citing *Reynolds*, endorsed the officer's actions. *Vandenberg*, 2003-NMSC-030, ¶ 42. An identical analysis applies here. Accordingly, we hold that Officer Sullivan was within his authority to ask for Defendant's driver's license, registration, and proof of insurance; it makes absolutely no difference that Officer Sullivan had already dispelled his initial suspicions for the stop. *See In re Forfeiture of ($28,000)*, 1998-NMCA-029, ¶ 13, 124 N.M. 661, 954 P.2d 93 (filed 1997) (holding that police may properly continue a detention for the limited purpose of inspecting a driver's documents after the initial reasonable suspicion subsides).

**{19}** Had police not acquired additional reasonable suspicion during the exchange of documents, the encounter might have ended without a consensual search and Defendant's subsequent arrest. Instead, while handing over his documents to Officer Sullivan, Defendant stated he had been stopped by police earlier in the day with a firearm. Officer Sullivan then asked Defendant to exit the vehicle and, with Defendant's permission, conducted a pat-down for weapons. Defendant does not dispute that he consented to the pat-down. Officer Sullivan's mere request for Defendant to exit the vehicle was not impermissible on these facts because, as we held in *State v. Lowe*, "an officer can require the driver and passengers to exit a vehicle out of a concern about weapons." 2004-NMCA-054, ¶ 13, 135 N.M. 520, 90 P.3d 539. "Even in routine traffic stops, police may adopt precautionary measures addressed to reasonable fears." *Id.* Indeed, the United States Supreme Court has observed that police take "inordinate risks . . . when they approach cars with persons seated in them, and [the Court has] approved the practice of requiring . . . persons to get out of the car and be subject to a protective frisk even in the absence of individualized suspicion." *State v. Lovato*, 112 N.M. 517, 522, 817 P.2d 251, 256 (Ct. App. 1991) (discussing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977), in which the Court held that any intrusion occasioned by ordering a suspect out of a vehicle is "*de minimis*. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a serious intrusion upon the sanctity of the person, but it hardly rises to the level of a petty indignity. . . . What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." (internal quotation marks omitted)).

**{20}** We must defer to the undisputed factual findings of the district court, which indicate that based on Defendant's statement and the circumstances known to Officer Sullivan at the time, Officer Sullivan believed Defendant to be both armed and a threat to officer safety. Because Officer Sullivan's testimony is undisputed, it is impossible for us to say that a reasonable officer under the same circumstances would have inevitably reached a different conclusion. Under such circumstances, Officer Sullivan's pat-down, conducted with Defendant's consent, was not per se improper. We hold only that Officer Sullivan legally ordered Defendant out of the vehicle and obtained his consent to conduct a pat-down. Our holding should not be read to give the officers carte blanche to conduct pat-downs whenever they conclude a gun is present within an

automobile. That has never been the law in New Mexico. Simply possessing a firearm within a vehicle has always been a right guaranteed by our state's constitution. N.M. Const. art. II, § 6; *cf. State v. Gutierrez*, 2004-NMCA-081, ¶¶ 13-15, 136 N.M. 18, 94 P.3d 18 (observing that although it is lawful to carry a gun in a vehicle, mere "lawful possession of a gun has *no bearing on the reasonableness of the officer's action* to separate a suspect from a firearm within his possession" for purposes of officer safety (emphasis added)).

**{21}** Yet, even if we presume the impropriety of Officer Sullivan's pat-down, the officers still had reasonable suspicion to continue the detention in this case on the basis of the marijuana odor detected by Officer Gutierrez. After smelling the odor, Officer Gutierrez asked Defendant "if he was smoking marijuana in the car," and Defendant replied that "he had smoked about six . . . hours earlier." At that point, the officers asked Defendant's permission to search the vehicle, and Defendant consented both verbally and in writing. Thus, similar to this Court's holding in *State v. Pacheco*, we conclude, based on the odor of marijuana and Defendant's admission of having recently smoked it, that the officers were justified in requesting Defendant's consent to search the vehicle. 2008-NMCA-131, ¶¶ 15-17, 145 N.M. 40, 193 P.3d 587 (citing factors permissibly considered); *see State v. Van Dang*, 2005-NMSC-033, ¶¶ 1, 5, 16, 138 N.M. 408, 120 P.3d 830 (holding that the driver's alleged permissive use of a rental vehicle, his nervousness, and his inconsistent descriptions of travel plans were sufficient to support the expansion of the investigation such that the officer was justified, based on his experience and training, in inquiring about the presence of drugs and seeking permission to search the vehicle). Finally, once Defendant consented to the search, any evidence acquired therefrom satisfied constitutional standards. *See State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025 ("Recognized exceptions to the warrant requirement include exigent circumstances, searches incident to arrest, inventory searches, *consent*, hot pursuit, open field, and plain view." (emphasis added)).

**CONCLUSION**

**{22}** Based on the foregoing analysis, we hold that both the initial stop as well as subsequent detention in this case were supported by reasonable suspicion. Accordingly, we affirm the district court's order denying Defendant's motion to suppress.

**{23}** **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____

**JAMES J. WECHSLER**, **Judge**

_____

8

**ROBERT E. ROBLES, Judge**

**Topic Index for** *State v. Candelaria***, Docket No. 28,565**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| CL-MH | Motor Vehicle Violations |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CN | Consent |
| CA-RS | Reasonable Suspicion |
| CA-SZ | Search and Seizure |
| CA-WS | Warrantless Search |