This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                      **NO. 35,369**

**ARTURO GARCIA-PONCE,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Albert J. Mitchell, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

D. Eric Hannum
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1}     The State appeals from the district court's amended order suppressing the evidence. We were persuaded that the district court erred on multiple grounds, but not on all grounds asserted by the State. We also believed that further proceedings were appropriate. We issued a notice of proposed summary disposition, proposing to reverse and remand. The State filed a notice of non-filing, and Defendant filed a memorandum in opposition. We have considered the parties' responses and remain persuaded that the district court erred and further proceedings are required. We therefore reverse and remand.

{2}     In its docketing statement, the State challenged the district court's suppression order on four grounds: (1) standing was immaterial or that Defendant had standing to object to the search; (2) *Miranda* warnings were required during the traffic stop; (3) Defendant's consent to the search was invalid; and (4) suppression of all physical evidence and statements made by Defendant was warranted. [DS 4] We do not construe the district court's order in the same manner as the State in its docketing statement. We construe the district court's order to rule that Defendant's standing was immaterial because either he did not have standing to consent to the search, which would render the search illegal, or he did have standing and could consent to the search, as the State argued. [RP 125] Also, we construe the district court's order to rule that Defendant was arrested and was not given *Miranda* warnings and, therefore, his statements, his consent to the search, and the physical evidence must be

2

suppressed. [RP 124-26] We are not persuaded that the district court evaluated the validity or scope of Defendant's consent.

{3} With this understanding of the district court's order, our notice proposed to hold that there were grave flaws in the district court's reasoning and legal conclusions. We continue to believe that the following flaws require reversal, which we explain more fully below. First, Defendant's standing was not immaterial. Second, Defendant was not under arrest, but rather subject to an investigatory detention, and therefore *Miranda* warnings were not required. As a result, the district court's suppression of the evidence is not justified by the failure to *Mirandize* Defendant. Third, *Miranda* warnings are not a pre-requisite to obtaining valid consent to search, and consent to search is not a statement subject to suppression.

{4} Because the district court related Defendant's standing to his consent and related Defendant's consent to the officer's failure to *Mirandize* Defendant, we discuss these matters in reverse order, starting with whether Defendant was under arrest for purposes of *Miranda*. Within this framework, we also address Defendant's memorandum in opposition.

**Defendant Was Not Under Arrest**

{5} As our notice proposed to hold, the district court made a legal error by concluding that when the officer decided to restrain Defendant due to the smell of raw marijuana and decided he was not free to leave, the officer needed to have given

3

Defendant *Miranda* warnings before continuing the interrogation. [RP 126] We explained that our Court has addressed this legal misconception and held that "this 'free-to-leave' formulation of the test is problematic because in some circumstances, such as routine traffic stops, a person is seized and does not believe he or she is free to leave but is also not in custody under *Miranda*." *State v. Wilson*, 2007-NMCA-111, ¶ 15, 142 N.M. 737, 169 P.3d 1184. The free-to-leave inquiry is only the beginning of the *Miranda* analysis that determines whether the person was seized. *See id.* ¶ 22. "[B]ecause not every seizure constitutes custody for purposes of *Miranda*[,]" the analysis continues if a person is not free to leave. *Id.* (internal quotation marks and citation omitted). "In determining whether a person is in *Miranda* custody while being interrogated, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* ¶ 14 (internal quotation marks and citation omitted). "The following factors guide our inquiry: the purpose, place, and length of interrogation, the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant." *State v. Hermosillo*, 2014-NMCA-102, ¶ 11, 336 P.3d 446 (alteration, omission, internal quotation marks, and citation omitted).

{6}     In the present case, the officer made a routine traffic stop of Defendant for speeding, in which the officer asked Defendant for his license, registration, and proof

4

of insurance, then issued him traffic citation. [RP 82, 116] This constituted a seizure, not police custody under *Miranda*. *See Wilson*, 2007-NMCA-111, ¶ 25; *see also State v. Candelaria*, 2011-NMCA-001, ¶ 18, 149 N.M. 125, 245 P.3d 69 (stating that asking for a driver's license, registration, and proof of insurance are inquiries that "do not implicate a suspect's Fourth Amendment rights"). The officer smelled a strong odor of raw marijuana during the course of the stop and, after issuing the citation, the officer asked Defendant about marijuana use in the vehicle and whether there was any marijuana in the vehicle. [RP 71, 78, 82] We proposed to hold that this a reasonable expansion of the detention, because the odor of marijuana supplied reasonable suspicion of criminal activity and even probable cause. *See Candelaria*, 2011-NMCA-001, ¶ 21 (holding that even if the patdown for weapons was improper, following a routine traffic stop, the extended detention was justified based on the smell of marijuana); *State v. Capps*, 1982-NMSC-009, ¶ 12, 97 N.M. 453, 641 P.2d 484 ("The smell of marijuana alone can satisfy the probable cause requirement for a warrantless search."). Defendant told the officer that there was marijuana inside a blue backpack in the trunk of the car. [RP 76] The officer requested and received consent from Defendant to search the vehicle. [RP 62, 82] The officer asked for the passenger's license and instructed Defendant and the passenger to stand on the shoulder of the road about thirty yards away. [RP 76] Moments later three officers arrived to assist with security and the search. [Id.] The blue backpack was found and contained

5

marijuana, and a small amount of cocaine, a pipe, and more marijuana was discovered on the rear passenger floorboard in a medicine container. [Id.] The officer placed Defendant under arrest, handcuffed him, placed him in the rear of his patrol vehicle, and read Defendant his *Miranda* rights. [RP 76-77]

{7}     We saw nothing in the evidence recounted above to suggest that Defendant was subjected to an unreasonably long detention, such that he was under de facto arrest. *See State v. Skippings*, 2014-NMCA-117, ¶¶ 19, 25, 338 P.3d 128 (examining cases where ten-, thirty-, and forty-minute long roadside detentions were not unreasonable de facto arrests). Nor is there any evidence of coercive interrogation or coercive restraint on Defendant's freedom of movement; such as handcuffing, confinement in a small space, and overwhelming police presence. *See, e.g.*, *State v. Nieto*, 2000-NMSC-031, ¶¶ 18-21, 129 N.M. 688, 12 P.3d 442 (holding that even where the defendant was being questioned in a police station in a small room with the door closed and a detective blocking the exit, the defendant's freedom was not restricted in a manner that constituted *Miranda* custody); *Wilson*, 2007-NMCA-111, ¶¶ 17, 25-28 (analyzing several cases where the police interaction was more invasive and did not constitute a custodial interrogation). It appears that the encounter proceeded as a temporary, noninvasive investigatory detention, where the officer was speaking conversationally with Defendant when Defendant made incriminating statements, and then the officer had him leave the vehicle to stand on the roadside away from the

officers during the search. Accordingly, we were not persuaded that Defendant was subjected to treatment that rendered him under formal arrest, such that *Miranda* warnings should have been given. Thus, we proposed to hold that the district court's grounds for suppression the evidence were erroneous.

{8}     In response to our notice, Defendant maintains that he was in custody because he was not free to leave and because the officer claimed to have smelled marijuana, which made it clear that serious allegations were afoot. [MIO 4] He contends that the normal restrictions of a routing traffic stop for speeding escalated to a point that must be considered analogous to arrest. Defendant does not rely on any analogous authority to support his arguments. We are not persuaded that Defendant's assertions make the investigative detention seem any more coercive, lengthy, or confining than we previously believed. We are not persuaded that Defendant was subjected to a custodial interrogation that required *Miranda* warnings. As such, we are not persuaded that suppression of Defendant's statements or the physical evidence was justified on the grounds stated by the district court.

**The Officer Had Reasonable Suspicion to Expand the Stop**

{9}     Defendant's other argument in his memorandum in opposition is that we should affirm the suppression of the evidence because the officer lacked reasonable suspicion to question Defendant about marijuana. [MIO 5] Defendant asks us to affirm on these alternate grounds under the doctrine of "right for any reason." [MIO 4-5] Defendant

7

bases his argument on the officer's statement that he smelled raw marijuana and on the State's concession that the officer must have been mistaken because the small amount of raw marijuana in the trunk in the backpack would not have emitted the overwhelming odor the officer claimed to have detected. [MIO 5] The State explained that the officer must have smelled burned marijuana, instead. [MIO 5] Defendant seems to argue that because the officer's testimony was that he smelled raw marijuana and that could not be true, there was no basis to expand the traffic into questions about marijuana. [MIO 4-5]

{10}    It is for the fact-finder to resolve conflicts in the evidence, not this Court. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). The district court's findings indicate that it believed the officer was overwhelmed by the smell of raw marijuana. [RP 124, 126] The officer's detection of the odor of marijuana supplied him with reasonable suspicion of criminal activity sufficient to continue the detention and expand it into an investigation of his suspicion. *See Candelaria*, 2011-NMCA-001, ¶ 21 (holding that even if the patdown for weapons was improper, following a routine traffic stop, the extended detention was justified based on the smell of marijuana); *Capps*, 1982-NMSC-009, ¶ 12 ("The smell of marijuana alone can satisfy the probable cause

8

requirement for a warrantless search."). Based on the foregoing, we reject Defendant's claim that the officer lacked reasonable suspicion.

**Consent to Search**

{11}     As our notice indicated, to the extent the district court ruled that Defendant's consent was invalid or inadmissible for the failure to give *Miranda* warnings, we are not persuaded. "We have held that *Miranda* warnings are not a prerequisite to obtaining a valid consent to search." *State v. Shaulis-Powell*, 1999-NMCA-090, ¶ 16, 127 N.M. 667, 986 P.2d 463; *see State v. Carlos A.*, 2012-NMCA-069, ¶ 16, 284 P.3d 384 ("[A] a police officer requesting consent to search an automobile need not advise the person of the right to refuse consent in order to obtain valid consent, but the person's knowledge of this right is a factor to be considered in analyzing voluntariness."); *cf. State v. Randy J.*, 2011-NMCA-105, ¶¶ 13-20, 150 N.M. 683, 265 P.3d 734 (holding that even where *Miranda* warnings should have been given, a child's consent to a blood test is not testimonial within the meaning of the Fifth Amendment and not therefore a statement subject to exclusion in the absence of *Miranda* warnings). We continue to believe the district court erred by ruling that Defendant's consent was invalid or inadmissible on *Miranda* grounds, because they are unrelated concepts. Also, as we stated in our notice, the district court did not otherwise rule on the validity of Defendant's consent.

**Defendant's Standing**

9

{12} We would like to point out that Defendant's consent and the scope thereof is similar, but not the same as Defendant's standing to challenge various aspects of the encounter, contrary to the implication in the district court's first legal conclusion. [RP 125] Our notice proposed to reach the merits of Defendant's standing, given that it is a material inquiry. Our notice set forth the appropriate case law and inquiry for assessing Defendant's standing, which was not fully argued below, and proposed to hold that Defendant had a reasonable expectation of privacy sufficient to establish standing to challenge the search of the vehicle that he was driving. *See State v. Van Dang*, 2005-NMSC-033, ¶ 7, 138 N.M. 408, 120 P.3d 830 ("To establish standing, [a d]efendant must demonstrate that he had a subjective expectation of privacy that society will recognize as reasonable."). The State did not oppose our proposed analysis. Upon reflection, we believe it is more prudent to simply reverse the district court's determination that Defendant's standing was immaterial. We include on remand the need for further proceedings under the legal standards set forth in our notice and for the district court to rule on Defendant's standing to challenge the search of the vehicle and/or the backpack.

**Questions Remaining on Remand**

{13} Because we reverse the district court's order on threshold matters, we explain the questions remaining on remand. As stated above, Defendant's standing to challenge the search of vehicle and/or backpack is material and should be analyzed

10

under the case law set forth in our notice. Also, as we explained in our notice, neither Defendant's consent nor a warrant is required if probable cause and exigent circumstances justified the search. Because the district court suppressed the evidence on different, erroneous grounds, we remand for further proceedings on presence of probable cause and exigent circumstances to justify the search of the backpack. If the search cannot be justified on this basis, then further proceedings are required to determine whether Defendant's consent to search was valid and extended to the backpack.

**{14}**     Based on the foregoing, we reverse the district court and remand for further proceedings on the matters described above.

**{15}     IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____

11

**MICHAEL E. VIGIL, Judge**