The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: January 18, 2023

**No. A-1-CA-38836**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**MELISSA ORTEGA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1} Defendant Melissa Ortega entered a conditional plea of guilty to a single count of attempted trafficking of a narcotic, contrary to NMSA 1978, Section 30-31-20(A)(3)(c) (2006). Defendant reserved her right to appeal the denial of her motion to suppress evidence obtained from her vehicle during the course of an investigatory stop on May 24, 2019. Defendant claims that there was no reasonable suspicion of illegal activity to justify the stop and therefore, her right to be secure against unreasonable searches and seizures under both the Fourth Amendment to the United State Constitution and Article II, Section 10 of the New Mexico Constitution were violated, requiring suppression of the evidence seized. We conclude that the police officer had reasonable suspicion that Defendant had committed the felony offense of aggravated fleeing a police officer six weeks earlier, on April 11, 2019, contrary to NMSA 1978, Section 30-22-1.1 (2003, amended 2022). Because the stop was justified by the officer's reasonable suspicion Defendant had committed a felony offense, we affirm.

**BACKGROUND**

**I.       The April 11, 2019 Flight Incident**

{2}     On April 11, 2019, Officer Forsberg of the Albuquerque Police Department attempted to stop a distinctive-looking vehicle (a silver Infiniti Sedan spray-painted

with purple accents), after running a license plate search and learning that there was an outstanding warrant for Defendant, who was the vehicle's registered owner. Officer Forsberg was driving a fully marked police vehicle, and he engaged its lights and sirens in attempting to stop Defendant's vehicle. The driver of the vehicle fled at a high rate of speed, running multiple red lights in moderately heavy traffic. Officer Forsberg pursued the vehicle until it entered an industrial area, where he decided it would be unsafe to continue his pursuit. Officer Forsberg did not see the driver of the vehicle on that April date and therefore did not know whether Defendant was driving her car.

**II.     The May 24, 2019 Stop**

{3}     About six weeks later, on May 24, 2019, Officer Forsberg saw and recognized Defendant's vehicle, based on its distinctive markings, as the vehicle that had fled from his attempted stop on April 11, 2019. Officer Forsberg signaled the vehicle to pull over, and it came to a stop. After he stopped the vehicle, Officer Forsberg ran a license and registration check and discovered that Defendant did not have valid registration or insurance.

{4}     Officer Forsberg then approached the vehicle to investigate the April 11, 2019 incident. After asking Defendant to exit her vehicle, Officer Forsberg asked Defendant if she was driving her vehicle on April 11, 2019. Defendant denied that she was the driver on that date. Officer Forsberg then asked Defendant about

2

registration and insurance, and she admitted the vehicle was not registered or insured. In accordance with standard operating procedure regarding uninsured vehicles, Officer Forsberg then arranged for the vehicle to be towed. Also in accordance with standard procedure, Officer Forsberg initiated an inventory of the contents of a vehicle in preparation for towing. During that inventory, Officer Forsberg found a backpack containing a substantial amount of methamphetamine. Defendant was then arrested and charged with trafficking a narcotic.

{5}     Prior to trial, Defendant moved to suppress the evidence found in the inventory of her vehicle. She claimed that suppression of the evidence found in the search was required because Officer Forsberg's stop, which led to the discovery of the evidence, was not supported by reasonable suspicion.[1]

{6}     Following a hearing in which Officer Forsberg was the sole witness, the district court denied Defendant's motion to suppress. The district court found that the April 11, 2019, flight incident was either a completed misdemeanor (resisting, evading or obstructing an officer) or a completed felony (aggravated fleeing an officer) and that Officer Forsberg's suspicion that Defendant had committed either

---

[1]Defendant does not pursue on appeal her claim in district court that Officer Forsberg lacked reasonable suspicion that Defendant was driving the car for which she was the registered owner on April 11, 2019. Defendant apparently concedes that, absent evidence to the contrary, it is reasonable for a police officer to believe that the owner of the car is the driver. *See State v. Candelaria*, 2011-NMCA-001, ¶ 15, 149 N.M. 125, 245 P.3d 69.

3

offense provided a reasonable basis to justify the stop "given the circumstances of the incident in April 2019."

**DISCUSSION**

{7}     Defendant contends on appeal that the evidence in the district court was insufficient to support the district court's conclusion that Officer Forsberg had reasonable suspicion that Defendant committed felony aggravated fleeing on April 11, 2019. Defendant contends that the evidence in the record supports at most reasonable suspicion that Defendant committed misdemeanor resisting, evading or obstructing an officer in fleeing from Officer Forsberg's attempted stop.

{8}     Most of Defendant's brief assumes that this Court will be persuaded that the April 11, 2019, fleeing incident amounted to nothing more than misdemeanor fleeing. Relying on this assumption, Defendant urges this Court to adopt a categorical rule that a law enforcement officer's suspicion that a defendant committed a completed misdemeanor in the past can never provide constitutionally sufficient reasonable suspicion for an investigatory stop. Still relying on the assumption that the incident of April 11, 2019, was a misdemeanor, Defendant asks this Court to hold, in the alternative, that an officer's reasonable suspicion for an investigatory stop can be based on a completed misdemeanor only when the misdemeanor presents a clear and continuing danger to the public.

{9} Because we conclude that Officer Forsberg had reasonable suspicion that Defendant had committed the felony offense of aggravated fleeing a law enforcement officer on April 11, 2019, we affirm the district court's decision denying Defendant's motion to suppress on this basis. We decline Defendant's invitation to explore the circumstances under which a completed a misdemeanor offense can provide reasonable suspicion for an investigatory stop because that question is not relevant to our resolution of this appeal.

**I.      Standard of Review**

{10} A motion to suppress evidence presents a mixed question of law and fact. *State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858. On review, we first determine whether there was substantial evidence to support the factual findings of the district court, indulging all inferences in favor of the prevailing party. *Id.* We review the application of law to the facts de novo to determine if the officer had constitutionally reasonable suspicion to justify an investigatory stop. *Id.*

**II.     The Applicable Principles of Law**

{11} First, we address Defendant's claim that Article II, Section 10 of the New Mexico Constitution provides increased privacy protection for individuals in automobiles. We reject this contention. Our case law is clear that the New Mexico Constitution affords no greater protection against investigatory traffic stops than does the Fourth Amendment of the United States Constitution. *See Yazzie*, 2016-

NMSC-026, ¶ 38 ("Although we have interpreted Article II, Section 10 to provide broader protections against unreasonable search and seizure than the Fourth Amendment in some contexts, we have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop." (citation omitted)). Defendant provides no basis for us to reconsider our construction of the New Mexico Constitution. We therefore do not address this argument further. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments).

{12}     The following principles of law apply to an investigatory stop under both state and federal law. First, an investigatory stop must be justified at its inception. *See Yazzie*, 2016-NMSC-026, ¶ 19 (providing that the first question involved in assessing the reasonableness of a stop is whether the stop is justified at its inception). "[An investigatory] traffic stop is justified at its inception if supported by reasonable suspicion that a law has been violated," and "[a]n officer's reasonable suspicion must be a particularized suspicion, based on all the circumstances, that a particular individual, the one detained, is breaking, or has broken, the law." *Id.* ¶ 20 (alteration, internal quotation marks, and citation omitted). Our Supreme Court has explained that "[w]e will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged

6

objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). We emphasize that the test for reasonable suspicion is an objective one: "The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *Id.* (internal quotation marks and citation omitted). "If police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *United States v. Hensley*, 469 U.S. 221, 229 (1985).

**III.  The District Court Did Not Err in Concluding That Officer Forsberg Had Reasonable Suspicion That Defendant Had Committed Felony Aggravated Fleeing on April 11, 2019**

{13}   We turn to Defendant's claim that the district court erred in concluding that the events of April 11, 2019, supported a reasonable suspicion that Defendant had committed aggravated fleeing from a law enforcement officer, contrary to Section 30-22-1.1.

{14}   Section 30-22-1.1 defines the crime of aggravated fleeing a law enforcement officer as follows:

> A. Aggravated fleeing a law enforcement officer consists of a person willfully and carelessly driving a vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light,

7

siren or other signal, by a uniformed law enforcement officer . . . in pursuit in accordance with the provisions of the Law Enforcement Safe Pursuit Act . . . .[2]

B. Whoever commits aggravated fleeing a law enforcement officer that does not result in injury or great bodily hard to another person is guilty of a fourth degree felony.

{15}     Defendant does not argue that the evidence is insufficient to support either the district court's finding that the driver of the vehicle "willfully and carelessly [drove] a vehicle in a manner that endanger[ed] the life of another person." Nor does Defendant challenge the district court's finding that the Officer Forsberg turned on his flashing lights and signaled the vehicle to pull over, or that the driver took off at a high rate of speed after being given that visual and audible signal to stop. Defendant claims, without citation to authority apart from the statute itself, that Section 30-22-1.1 "requires pursuit and Officer Forsberg acknowledged that he did not pursue [Defendant's] car after his unsuccessful attempt to initiate a traffic stop."

{16}     Defendant does not cite to the record to support her statement that Officer Forsberg acknowledged that he did not pursue Defendant's car after he signaled the car to stop. Our review of the transcript of the suppression hearing shows that Officer Forsberg testified that he continued to pursue Defendant's fleeing vehicle after signaling the vehicle to stop until Defendant's vehicle entered an industrial area,

---

[2]The Law Enforcement Safe Pursuit Act (LESPA) is codified at NMSA 1978, §§ 29-20-1 to -4 (2003). The LESPA and Section 30-22-1.1 were passed as part of the same bill by the Legislature in 2003. *See* 2003 N.M. Laws, ch. 260, §§ 1-6.

where the danger of continuing a high-speed chase led him to stop his pursuit. Even assuming the statute requires pursuit *after* an officer's signal to stop, an issue which we do not address, this evidence satisfies the requirement for substantial evidence of "pursuit" after the attempted stop.

{17}     To the extent Defendant is arguing that a police officer must engage in a high-speed pursuit after the attempted stop in order to satisfy the statute, we agree with the State that a high-speed pursuit by the officer is not a required element of the offense of aggravated fleeing. Quoting our Supreme Court's decision in *State v. Vest*, 2021-NMSC-020, ¶ 29, 488 P.3d 626, the State contends that "it is the conduct of [the defendant in] fleeing the police by driving dangerously, itself, that violates the aggravated fleeing statute." We agree that aggravated fleeing does not depend on whether the officer engages in a high-speed pursuit; it is the driver's fleeing in a manner that endangers the lives of others that is key.

{18}     Our Supreme Court has construed our aggravated fleeing statute in *Vest*, *see id.*, and prior to *Vest*, in *State v. Padilla*, 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299. *Padilla* provides that "[t]he scienter requirement for aggravated fleeing is satisfied when the defendant flees a law enforcement officer with both: (a) the knowledge that the individual [commanding a stop] is a law enforcement officer, as designated by his [or her] uniform and marked vehicle, and (b) the knowledge that the law enforcement officer has signaled him [or her] to stop, either by use of a visual

9

or audible signal." *Id.* ¶ 15. If the driver, while fleeing the law enforcement officer, "willfully and carelessly driv[es] his [or her] vehicle in a manner that endangers the life of another," the crime of aggravated fleeing is complete. Section 30-22-1.1(A).

{19} In both *Padilla*, 2008-NMSC-006, ¶ 14, and *Vest*, 2021-NMSC-020, ¶ 26, our Supreme Court specifically addressed the difference between the misdemeanor of resisting and evading a police officer, which Defendant claims is the only offense the evidence shows Officer Forsberg had reasonable suspicion to believe she committed on April 11, 2019, and the felony of aggravated fleeing. *Vest* held that the Legislature "elevated the misdemeanor of resisting and evading a police officer to the felony of aggravated fleeing if a defendant evades a police officer by driving in a dangerous manner." 2021-NMSC-020, ¶ 26. *Padilla* similarly distinguishes misdemeanor fleeing from aggravated fleeing based on the manner in which the defendant flees the officer's attempted stop, holding that "the Legislature created a more severe punishment, a felony, when a person willfully and carelessly drives his vehicle in a manner that endangers the life of another." 2008-NMSC-006, ¶ 14 (alteration, internal quotation marks, and citation omitted).

{20} Because the crime of aggravated fleeing does not require that the police officer engage in a high-speed chase of a defendant, we conclude that substantial evidence in the record supports the district court's conclusion that Officer Forsberg had reasonable suspicion that Defendant was driving her vehicle on April 11, 2019, and

10

that she had committed the felony of aggravated fleeing a law enforcement officer on that date by fleeing Officer Forsberg's pursuit at a high rate of speed, running multiple red lights in moderately heavy traffic.

**{21}** We note that it is not disputed in this appeal that a reasonable suspicion of the commission of a felony is sufficient to justify an investigatory stop. Therefore, Officer Forsberg's investigatory stop on May 24, 2019, was justified by his reasonable suspicion that Defendant had committed the felony of aggravated fleeing a law enforcement officer on April 11, 2019.

**CONCLUSION**

**{22}** We affirm the district court's entry of judgment and sentence.

**{23}** **IT IS SO ORDERED.**


_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**


_____
**ZACHARY A. IVES, Judge**


_____
**MICHAEL D. BUSTAMANTE, Judge, retired, sitting by designation**

11