# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2016-NMSC-026

Filing Date: June 30, 2016

Docket NO. S-1-SC-34866

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

JOANN YAZZIE,

      Defendant-Respondent.


**ORIGINAL PROCEEDING ON CERTIORARI**
Karen L. Townsend, District Judge

Hector H. Balderas, Attorney General
Margaret E. McLean, Assistant Attorney General
Kenneth H. Stalter, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
B. Douglas Wood, III, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**DANIELS, Chief Justice.**

**{1}** The New Mexico Mandatory Financial Responsibility Act (MFRA), NMSA 1978, §§ 66-5-201 to -239 (1978, as amended through 2015), prohibits operation of a motor vehicle without liability insurance or other proof of financial responsibility and requires that proof of compliance be reported to the Motor Vehicle Division (MVD) of the New Mexico Taxation and Revenue Department (the Department) and kept with the vehicle. *See* § 66-5-

1

205(A)-(B); 66-5-205.1(A)-(B). An MVD database that law enforcement officers can access from their onboard computers reports a compliance status of "active" or "suspended" or "unknown," based on MVD record information on liability insurance for each individual registered motor vehicle.

{2}     In this case, where the evidentiary record demonstrates that close to ninety percent of vehicles reflecting an "unknown" compliance status in MVD records are in fact uninsured in violation of the law, we hold that an officer who learns that the MVD records for a particular vehicle indicate an "unknown" compliance status has constitutionally reasonable suspicion to stop the vehicle and investigate further. We reverse the contrary opinion of the Court of Appeals.

## I.     BACKGROUND

### A.     The Mandatory Financial Responsibility Act

{3}     Under the MFRA,

> No person shall drive an uninsured motor vehicle, or a motor vehicle for which evidence of financial responsibility as was affirmed to the department is not currently valid, upon the streets or highways of New Mexico unless the person is specifically exempted from the provisions of the [MFRA].

Section 66-5-205(B). Violation of the MFRA is a misdemeanor offense. Section 66-5-205(E).

{4}     The Legislature instituted the MFRA out of an awareness "that motor vehicle accidents in New Mexico can result in catastrophic financial hardship" and with the purpose of ensuring that motor vehicle operators "have the ability to respond in damages to accidents" occurring on New Mexico roadways. Section 66-5-201.1. The MFRA further provides that the Department shall neither issue nor renew the registration for an uninsured vehicle and that it shall suspend an existing registration if evidence reflects that insurance has not been maintained. *See* § 66-5-206.

{5}     In 2001, the New Mexico Legislature amended the MFRA to enhance identification of uninsured vehicles. *See* H.B.847, 45th Leg., Reg. Sess. (N.M. 2001); § 66-5-205.1(D), (F). Among the resulting statutory provisions, the Legislature directed the Department to promulgate rules requiring insurance carriers to submit monthly reports of terminated insurance policies for the Department to keep in its files on the corresponding vehicles. Section 66-5-205.1(D). In response, the Department began operating the insurance identification database at issue in this case.

### B.     Facts and Proceedings

**{6}** While on routine patrol in San Juan County, New Mexico State Police Officer James Rempe entered the license plate number of the vehicle Defendant Joann Yazzie was driving into his patrol car's mobile data terminal (MDT). The MDT remotely accesses records maintained by the MVD regarding the compliance status of vehicles registered in New Mexico. The query returned a result indicating that the compliance status of the vehicle was "unknown." Upon receiving the report of "unknown" compliance status, Officer Rempe activated his emergency lights and pulled over Defendant's vehicle to investigate further. The "unknown" query return was the only basis for the traffic stop. Based on further information the officer acquired as a result of the stop, Defendant was arrested and charged in magistrate court with driving while under the influence of alcohol and failure to maintain insurance.

**{7}** Defendant filed a motion to suppress all evidence obtained during the course of the stop, arguing that the officer lacked reasonable suspicion to initiate the stop and thereby violated her right to be secure against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The magistrate court denied the motion, and Defendant conditionally pleaded guilty to a violation of NMSA 1978, Section 66-8-102 (2010) for driving while under the influence of intoxicating liquor or drugs, second offense, reserving the right to appeal the denial of the motion to suppress.

**{8}** On appeal to the district court, Defendant renewed her motion to suppress. At an initial motions hearing, the State offered a witness from the MVD to provide explanatory testimony about the meaning of an MVD designation of "unknown" compliance status and about "circumstances" in which "insurance would be valid [or] not valid." The district court observed,

> I think the State's looking for this expert based on my previous decisions that insurance unknown just doesn't cut it to me. I think it needs to be more, and I think the State's following my previous directive that if they don't have more, I'm going to be suppressing these stops.

**{9}** Accordingly the State called Walter Martinez, Bureau Chief for the MVD Insurance Tracking and Compliance Program, to testify at the subsequent suppression hearings. Martinez testified that the database Officer Rempe accessed is maintained by a third-party vendor that receives information from insurance carriers and matches it with vehicle registration information provided by the MVD. The MVD receives nightly updates, which are in turn immediately sent to other agencies, including the Department of Public Safety.

**{10}** An officer requesting insurance information from the system pertaining to a particular vehicle receives one of three possible responses through the MDT: "active" or "suspended" or "unknown." When entry of vehicle information triggers an "unknown" compliance status, "it is highly likely" that there is no insurance. Martinez testified that the MVD tracking process reflects that this likelihood of no insurance is ninety percent or

3

greater.

**{11}** Martinez testified that when the MVD learns a vehicle is uninsured, it notifies the owner and allows a total of ninety-five days for the owner to produce evidence of financial responsibility before suspending the registration of that vehicle. During this interim period following notice to the owner, the MVD classifies the compliance status of the vehicle as "unknown." Martinez further testified about an MVD report of statistics on uninsured-status vehicles, compiling data from the 118,477 vehicles categorized as "unknown" between October 5, 2011, and February 13, 2012. Of the total number of vehicles of "unknown" compliance status, only eleven percent actually turned out to have had the required insurance when classified as "unknown," ten percent had lapsed insurance coverage that was later reinstated. The registrations of the remaining eighty percent were ultimately suspended for failure to bring the vehicles into compliance with the law. Martinez testified that although the precise numbers fluctuate, the percentages in the four-month sample period were generally reflective of the population of vehicles the MVD monitors for any given period.

**{12}** The district court found that the investigatory stop was constitutionally valid and denied Defendant's motion to suppress, concluding that at the time Officer Rempe initiated the stop it was reasonable for him to suspect that Defendant was in violation of the MFRA, given the high likelihood that a vehicle with a reported "unknown" compliance status is uninsured.

**{13}** The Court of Appeals reversed, holding that an MDT report that Defendant's insurance status was "unknown" did not, without more support, provide reasonable suspicion to justify a traffic stop and that MVD statistics correlating "unknown" compliance status with being uninsured could not "serve as a proxy" for the officer's own personal knowledge at the time he conducted the stop, absent evidence he personally knew of the statistical correlation. *State v. Yazzie*, 2014-NMCA-108, ¶¶ 1, 10, 336 P.3d 984. The Court of Appeals accordingly reversed the district court's denial of Defendant's motion to suppress. *Id.* ¶¶ 15, 17.

**{14}** We granted the State's petition for writ of certiorari to consider whether a vehicle traffic stop based only on information from an MVD records inquiry reflecting an "unknown" compliance status for the particular vehicle is supported by reasonable suspicion.

## II.     STANDARD OF REVIEW

**{15}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. First, we "look for substantial evidence to support the trial court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861; *see also Fitzhugh v. N.M. Dep't of Labor, Emp't Sec. Div.*, 1996-NMSC-044, ¶ 24, 122 N.M. 173, 922 P.2d 555 ("'Substantial evidence' is evidence that a reasonable mind would regard as adequate to support a

4

conclusion." (citation omitted)). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *State v. Sewell*, 2009-NMSC-033, ¶ 12, 146 N.M. 428, 211 P.3d 885.

**{16}** In this case, the district court included findings of fact in its order denying Defendant's motion to suppress. The parties neither dispute the central facts of this case nor assert that the district court's findings were made in error. Accordingly, we accept the district court's factual findings and address whether Officer Rempe's actions were objectively reasonable and particularized as a matter of law. *See Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 13, 147 N.M. 157, 218 P.3d 75 ("When there are no challenges to the district court's factual findings, we accept those findings as conclusive.").

## III. DISCUSSION

**{17}** "[T]he United States and the New Mexico Constitutions provide overlapping protections against unreasonable searches and seizures." *State v. Rowell*, 2008-NMSC-041, ¶ 12, 144 N.M. 371, 188 P.3d 95; *see* U.S. Const. amend. IV; N.M. Const. art. II, § 10. Under the interstitial approach adopted by this Court in *State v. Gomez*, we ask "first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined." 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1. Accordingly, we first address whether Officer Rempe's traffic stop complied with requirements of the United States Constitution.

### A. The Traffic Stop Was Supported by Reasonable Suspicion Under the Fourth Amendment to the United States Constitution

**{18}** The Fourth Amendment to the United States Constitution "prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). While a full custodial arrest must be based on probable cause to believe a crime has been committed, *see Terry*, 392 U.S. at 24-26, an investigatory stop is grounded on the lesser standard of reasonable suspicion, *Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.").

**{19}** The overarching inquiry for all intrusions on personal liberty under the Fourth Amendment is reasonableness under the particular circumstances, "which involves two questions: whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Neal*, 2007-NMSC-043, ¶ 18, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted).

**{20}**     A traffic stop is justified at its inception if it is supported by reasonable suspicion that a law has been violated. *See State v. Jason L.*, 2000-NMSC-018, ¶¶ 14, 20, 129 N.M. 119, 2 P.3d 856. An officer's reasonable suspicion must be "a particularized suspicion, based on all the circumstances[,] that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Garcia*, 2009-NMSC-046, ¶ 43, 147 N.M. 134, 217 P.3d 1032 (alteration in original) (internal quotation marks and citation omitted). In determining whether an officer's suspicion was reasonable, we employ an objective assessment of the officer's actions. *See State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579. "The purpose of requiring objectively reasonable suspicion based on the circumstances is to prevent and invalidate police conduct based on hunches, which are, by definition, subjective." *State v. Ochoa*, 2009-NMCA-002, ¶ 25, 146 N.M. 32, 206 P.3d 143 (internal quotation marks and citation omitted). Accordingly, "[t]he subjective belief of the officer does not in itself affect the validity of the stop." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted).

### 1.     The investigatory stop was objectively reasonable

**{21}**     Defendant understandably does not argue that a stop based solely on an MVD database report of a "suspended" compliance status would have been invalid given the statutory requirement to maintain evidence of insurance or financial responsibility. *See State v. Candelaria*, 2011-NMCA-001, ¶¶ 1, 16, 149 N.M. 125, 245 P.3d 69 (holding that officers had reasonable suspicion to conduct a vehicle stop where official license and registration records reflected that the vehicle was registered to a driver with a revoked license). Conversely, a return of "active" without any other indicia of wrongdoing would necessarily fail to provide the individualized reasonable suspicion necessary to support a lawful stop. The critical inquiry before us rests on the response Officer Rempe received from the MVD database because an "unknown" compliance status is factually and legally less determinative than compliance statuses of "active" or "suspended."

**{22}**     The law necessarily tolerates some risk of investigatory intrusion on a person's freedom of movement where ambiguous circumstances could reasonably be construed as involving either lawful or unlawful activity. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (relying on precedent and noting that even where "conduct justifying the stop was ambiguous and susceptible of an innocent explanation[,] . . . officers could detain the individuals to resolve the ambiguity"). "[R]easonable suspicion . . . need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277. Reasonableness of a particular seizure instead "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

**{23}**     In *Prouse*, the United States Supreme Court employed this balancing test and held that discretionary license and registration spot checks of automobiles constituted an unreasonable search and seizure under the Fourth Amendment. *See* 440 U.S. at 663. The Court found that the marginal contribution to highway safety through such discretionary

6

stops did not outweigh the intrusion on individuals' Fourth Amendment interests. *See id.* at 660. The Court's concern centered on the lack of "an appropriate factual basis for suspicion directed at a particular automobile" or the absence of "some other substantial and objective standard or rule" for discerning which vehicle to stop out of the general pool of vehicles on the roadways. *Id.* at 661. The case before us does not represent the "kind of standardless and unconstrained discretion" that concerned the United States Supreme Court in *Prouse*. *See id.*

**{24}** "Reasonable suspicion depends on the reliability and content of the information possessed by the officers." *State v. Robbs*, 2006-NMCA-061, ¶ 13, 139 N.M. 569, 136 P.3d 570. Information an officer accesses from a government database is objective in that it is not subject to the officer's bias, but it must also be reliable. *See United States v. Esquivel-Rios*, 725 F.3d 1231, 1236 (10th Cir. 2013). In the context of informants, for example, the United States Supreme Court has emphasized that when "a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion . . . ." *White*, 496 U.S. at 330.

**{25}** This is not a case where an officer made a stop solely on the basis that he had no information indicating whether Defendant was operating a vehicle in compliance with the law. Officer Rempe stopped the vehicle based on a report from the MVD records for the vehicle, which under New Mexico law must be maintained for every registered vehicle, that did not show compliance with the law and instead reflected an "unknown" compliance status for the vehicle.

**{26}** Other jurisdictions have addressed analogous traffic stops based on suspected noncompliance with financial responsibility laws where, unlike this case, the appellate record contained no evidence of the statistical significance of an "unknown" compliance status report. *See, e.g.*, *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1206, 1209 (10th Cir. 2007) (concluding that a database report of vehicle insurance status "not found" was sufficient to establish reasonable suspicion to initiate a traffic stop in the absence of a showing of unreliability of the database); *State v. Dixson*, 633 S.E.2d 636, 639 (Ga. Ct. App. 2006) (holding that a stop was not based on reasonable suspicion where there were "no facts in the record indicating that a return of 'unknown' ma[de] it any more likely that a vehicle [was] uninsured rather than fully insured"); *Gonzalez-Gilando v. State*, 306 S.W.3d 893, 897 (Tex. App. 2010) (declining to find reasonable suspicion without "evidence developing the source of the information comprising the database, explaining what was meant when insurance information was unavailable, explaining why such information would be unavailable, illustrating the accuracy of the database, establishing the timeliness of the information within the database, . . . and the like").

**{27}** Under the approach of any of those jurisdictions, reasonable suspicion supported the stop in this case. Not only did the defense present no evidence of unreliability of the MVD database, as in *Cortez-Galaviz*, but the State developed the evidence, which *Dixson* and *Gonzales-Galindo* called out as lacking, to demonstrate that reliance on the New Mexico

7

MVD database report of an "unknown" compliance status provided a reasonable basis for suspecting that Defendant's vehicle was probably uninsured, as reflected in the findings of the district court.

**{28}** In the absence of any evidence in a particular case that the records cannot be reasonably relied on, we conclude that New Mexico's comprehensive statutory and regulatory scheme to maintain and make available to law enforcement up-to-date records of financial responsibility compliance justifies an officer's investigatory stop on the basis of a determination that MVD records reflect an "unknown" compliance status. We therefore agree with the approach taken by the Tenth Circuit in *Cortez-Galaviz* and would not place the burden on the State to call witnesses in each case to establish the significance of the "unknown" compliance status. Like the court in *Cortez-Galaviz*, we leave the door open to proof in a future case that contemporaneous realities have materially changed the reasonableness of using the MVD report for a traffic stop. *See* 495 F.3d at 1211 (basing the holding on the record before the court "without expressing views on what [it] might conclude if and when presented with a different record").

**{29}** We also reject the Defendant's argument that each individual officer making an investigatory stop on the basis of an MVD report of "unknown" compliance status must establish individual knowledge of the probabilities that status might reflect. That requirement would result in a chaotic and uneven application of the law and would make the outcomes of factually identical traffic stops vary in accordance with what each particular officer may have learned or remembered about MVD internal practices.

**{30}** It was objectively reasonable for Officer Rempe to suspect Defendant was operating an uninsured vehicle in violation of the law when the database indicated the compliance status was unknown to the MVD. If Officer Rempe's suspicion was particularized, the stop for further investigation "to verify or quell that suspicion" was constitutionally justified. *Sewell*, 2009-NMSC-033, ¶ 13.

**2.      The officer's reasonable suspicion was particularized to Defendant**

**{31}** Not only must an officer have an objective basis for suspecting that criminal activity is afoot, but the suspicion must also be particularized to the individual who is stopped. *United States v. Cortez*, 449 U.S. 411, 417 (1981). "If a police officer lacks individualized suspicion, the government's interest in crime prevention will not outweigh the intrusion into the individual's privacy and the detention violates the Fourth Amendment." *City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 18, 141 N.M. 261, 154 P.3d 76 (internal quotation marks and citation omitted).

**{32}** Defendant argues that the statistical data Martinez provided to explain the MVD's designation of "unknown" compliance fails to support particularized suspicion that Defendant, out of the group of operators of the vehicles that have an "unknown" compliance status, was breaking the law. Relying on *State v. Jones*, 1992-NMCA-064, ¶ 14, 114 N.M.

8

147, 835 P.2d 863, Defendant contends that "[s]tatistical information regarding a group does not give reasonable suspicion to stop a specific member of that group." The Court of Appeals similarly admonished against relying on general statistical probabilities to objectively support particularized suspicion. *See Yazzie*, 2014-NMCA-108, ¶ 16.

**{33}** Reasonable suspicion engages probabilities. *See New Jersey v. T.L.O.*, 469 U.S. 325, 346 (1985) ("[T]he requirement of reasonable suspicion is not a requirement of absolute certainty: sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." (internal quotation marks and citation omitted)). This does not endorse using general statistical probabilities or group characteristics to establish reasonable suspicion for a stop. New Mexico courts have consistently concluded that "[g]uilt by association and generalized suspicions are insufficient" to create reasonable suspicion for a search or seizure. *State v. Prince*, 2004-NMCA-127, ¶ 17, 136 N.M. 521, 101 P.3d 332; *see also State v. Gage R.*, 2010-NMCA-104, ¶ 19, 149 N.M. 14, 243 P.3d 453 (recognizing that "the Fourth Amendment demands more than a generalized probability" and concluding that "the search of a group of students gathering at the 'smoker's corner,' without reason to suspect that any particular student is in possession of contraband, is not constitutionally sound").

**{34}** For example, in *Jones* the Court of Appeals held that mere association with a known gang member and presence in an area known for gang activity, without more, was insufficient to support reasonable suspicion that the particular defendant was engaged in criminal conduct. *See* 1992-NMCA-064, ¶ 15. In *Jones*, officers stopped and searched the defendant because he was dressed in gang attire and walking on a street in an area of known gang activity with an avowed gang member. *Id.* ¶¶ 3-4. The Court of Appeals concluded that "the officers' initial stop of defendant was illegal," reasoning that the officers "had only generalized suspicions that a gang member, not specifically defendant, had committed a litany of crimes . . . [, but] they had nothing connecting this individual defendant to a particular crime or crimes, except the likelihood that he was a gang member." *Id.* ¶¶ 14-15.

**{35}** The record before us does not represent the "sweeping and indiscriminate" law enforcement actions that concerned the Court of Appeals in those cases. *See Gage R.*, 2010-NMCA-104, ¶ 19. Here, Officer Rempe had individualized, particularized suspicion that Defendant did not have insurance on her specific vehicle based on the MVD file report of an "unknown" compliance status for that vehicle. Officer Rempe entered the license plate number of the car Defendant was driving into his MDT, which was linked to the MVD database. The MVD database associated the specific license plate number entered with information on the vehicle registered under that plate number. This information included whether the vehicle was properly insured in compliance with the law. Upon receiving information that the compliance status of the particular vehicle was unknown to the MVD, it was reasonable for Officer Rempe to suspect that, unlike other cars on the roadway, Defendant did not have the requisite proof of financial responsibility for the vehicle she was driving.

**{36}** Under the circumstances presented here, Officer Rempe was justified in his objective and particularized belief that the MVD database maintained for the purpose of ensuring compliance with the MFRA contained no information reflecting that the vehicle Defendant was driving was insured. Officer Rempe then had reason "to pluck this needle from the haystack of cars on the road for investigation of a possible insurance violation." *Cortez-Galaviz*, 495 F.3d at 1206. Accordingly, Officer Rempe's investigatory stop complied with the requirements of the Fourth Amendment to the United States Constitution.

## B. The Traffic Stop Was Supported by Reasonable Suspicion Under Article II, Section 10 of the New Mexico Constitution

**{37}** Having determined that the district court did not err in denying the suppression motion under Fourth Amendment standards, we now address Defendant's rights under the New Mexico Constitution. The State contends that Defendant failed to preserve her state constitutional claim. We need not address that matter because we conclude that the result under the New Mexico Constitution is the same as under the United States Constitution.

**{38}** The controlling provision here is Article II, Section 10, which provides, "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." Although we have interpreted Article II, Section 10 to provide broader protections against unreasonable search and seizure than the Fourth Amendment in some contexts, *see Leyva*, 2011-NMSC-009, ¶ 3, we have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop, *see, e.g.*, *Garcia*, 2009-NMSC-046, ¶ 43 ("Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." (internal quotation marks and citation omitted)). We have defined and applied the reasonable suspicion standard in the same way when conducting both Fourth Amendment and Article II, Section 10 analyses. *See, e.g.*, *Garcia*, 2009-NMSC-046, ¶ 43 (defining reasonable suspicion in a state constitutional analysis as a "particularized suspicion, based on all the circumstances[,] that a particular individual, the one detained, is breaking, or has broken the law" (alteration in original) (quoting *Jason L.*, 2000-NMSC-018, ¶¶ 19-20 (analyzing reasonable suspicion under the Fourth Amendment))).

**{39}** Accordingly, we apply the same reasonable suspicion analysis to the investigatory stop here under Article II, Section 10 as we did under the Fourth Amendment, and we hold that under the circumstances the traffic stop did not violate the New Mexico Constitution.

## IV. CONCLUSION

**{40}** Because the MVD status report of an "unknown" compliance with statutory requirements for motor vehicle liability insurance provided reasonable suspicion that the particular vehicle Defendant was driving was uninsured in violation of the law, the investigatory stop was justified under both the United States and New Mexico Constitutions. We reverse the contrary opinion of the Court of Appeals and affirm the district court order

denying Defendant's motion to suppress.

**{41}    IT IS SO ORDERED.**

                                        _____

                                        **CHARLES W. DANIELS, Chief Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**BARBARA J. VIGIL, Justice**

_____

**JUDITH K. NAKAMURA, Justice**