This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37405

**CITY OF RIO RANCHO,**

Plaintiff-Appellee,

v.

**WESLEY LUNDY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Gina R. Manfredi, Assistant City Attorney
Rio Rancho, NM

for Appellee

Fuentes Law Office
Robert R. Fuentes
Rio Rancho, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant appeals his convictions for reckless driving, contrary to Rio Rancho Municipal Code, N.M., Rev. Ordinances ch. 70, art. VI, § 12-6-12.3 (2015, amended 2019), and eluding a police officer, contrary to Rio Rancho Municipal Code, N.M., Rev. Ordinances ch. 70, art. VI, § 12-6-12.7, arguing that his confession to the charges should be suppressed and his convictions reversed because (1) the officer did not have reasonable suspicion to justify the stop, and (2) the officer's questioning after the stop amounted to a custodial interrogation that required the officer to inform Defendant of his *Miranda* rights. We affirm.

## BACKGROUND

**{2}** On January 6, 2017, at approximately 11:30 p.m., Officer Roskos was on duty in Rio Rancho in a marked patrol car when he observed a truck speeding in the opposite direction. His police radar determined the truck to be going eighty-one miles per hour in a forty-five-mile-per-hour speed zone. He noted it was a "smaller midsize red truck" that appeared to be a Toyota, was "lifted," and had after-market "brushed aluminum wheels." As the truck approached an intersection, Officer Roskos activated his emergency lights and siren. The truck did not slow down and, tires squealing, turned left at the intersection. Officer Roskos followed with his lights and siren still on. The truck continued to flee, running a stop sign while making a right turn, nearly hitting another car, and continuing onto a dirt road.

**{3}** Officer Roskos chased the truck. Although it was dark and the two vehicles were driving at a high rate of speed down a lightly traveled road with dirt flying everywhere, obscuring his view, Officer Roskos was able "to get somewhat of a description on the license plate," which was faded and partially blocked by the license plate ring. Officer Roskos relayed to dispatch what he was able to observe under these conditions, reporting the plate as KXX-487. Officer Roskos was not sure that he had read the plate correctly and it turned out the plate number belonged to a different vehicle. The truck reached an arroyo and continued speeding down it. Officer Roskos determined the chase had become too dangerous and discontinued pursuit. He did not see the driver during the chase.

**{4}** Officer Roskos testified that approximately twenty-four hours later, on January 7, 2017, at around 11:00 p.m., he observed the same red truck again, this time in a McDonald's drive-through in Rio Rancho. Officer Roskos explained that he had a better opportunity to observe the truck on this occasion because his vehicle and the truck were traveling at three miles per hour in a parking lot. He testified that he was able to identify the truck as a Dodge Dakota with after-market aluminum wheels and license plate number KXY-407. Despite the discrepancies in make, model, and license plate number, he was certain it was the same truck he had chased the night before. He called into dispatch to refer the license plate number and to confirm the specific plate number he had called in the previous night; the numbers were close enough that it confirmed his suspicion that he had simply misread the plate number the during the chase.

**{5}** Officer Roskos stopped the truck, made contact with the driver—Defendant—and informed him that the truck had fled from him the night before. At first, Defendant denied driving at that time and told Officer Roskos he believed the truck had been stolen. Officer Roskos pressed Defendant about his story and again explained why he believed it was the same truck. Defendant finally admitted to driving the night before and apologized, telling Officer Roskos he had argued with his girlfriend and was driving angry. Officer Roskos told Defendant to expect a summons in the mail and that he was free to go.

**{6}** Defendant was convicted of reckless driving and eluding a police officer in Rio Rancho Municipal Court. He sought a de novo appeal in the Thirteenth Judicial District Court, during which he filed a motion to suppress all statements he made to Officer Roskos during the course of the stop. The district court held a hearing on the motion and heard testimony from both Officer Roskos and Defendant, after which it denied the motion and upheld the judgment and sentence of the municipal court. Defendant appeals.

## DISCUSSION

**{7}** Defendant asserts that the district court should have suppressed the statements he made after Officer Roskos stopped and questioned him, arguing that (1) the stop was not supported by reasonable suspicion, and (2) he should have been given his *Miranda* warnings before Officer Roskos questioned him. "A motion to suppress evidence involves a mixed question of fact and law." *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. Our review involves two parts: "First, we assess the district court's findings of fact in the light most favorable to the prevailing party and ensure that those findings are supported by substantial evidence. Second, we consider de novo whether the disputed police activity was reasonable given the totality of the circumstances." *State v. Candelaria*, 2011-NMCA-001, ¶ 8, 149 N.M. 125, 245 P.3d 69 (citation omitted).

## I. Reasonable Suspicion Justified an Investigatory Stop of Defendant's Vehicle

**{8}** The constitutions of both the United States and New Mexico prohibit " 'unreasonable searches and seizures' by the Government, and [their] protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."[1] *State v. Yazzie*, 2016-NMSC-026, ¶ 18, 376 P.3d 858 (internal quotation marks and citation omitted); *id.* ¶ 38 (discussing Article II, Section 10 of the New Mexico Constitution). "The overarching inquiry for all intrusions on personal liberty under the Fourth Amendment is reasonableness under the particular circumstances[.]" *Id.* ¶ 19. "We analyze the reasonableness of a stop in accordance with the two-part test set forth in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968): "(1) whether the stop was justified at its inception and (2) whether the officer's action was reasonably related in scope to the circumstances which justified the interference." *State v. Hubble*, 2009-NMSC-014, ¶ 7,

---

[1]Although Defendant asserts that the New Mexico Constitution affords him greater protection than the United States Constitution in this case, our Supreme Court has "defined and applied the reasonable suspicion standard in the same way when conducting both Fourth amendment and Article II, Section 10 analyses." *Yazzie*, 2016-NMSC-026, ¶ 38. We do not understand Defendant's brief to include any argument as to why we should depart from *Yazzie*. Therefore, we "apply the same reasonable suspicion analysis to the stop here under Article II, Section 10 as we [do] under the Fourth Amendment." *Id.* ¶ 39. To the extent that Defendant's brief could be construed to argue for more expansive protection under Article II, Section 10, Defendant has not developed the argument adequately for us to consider it, and we therefore decline to do so. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (stating that we will not rule on unclear or undeveloped arguments).

146 N.M. 70, 206 P.3d 579. In this case, Defendant does not allege that Officer Roskos exceeded the scope of the stop and so we consider only the first part of the test—whether the stop was justified at its inception.

**{9}** "A traffic stop is justified at its inception if it is supported by reasonable suspicion that a law has been violated." *Yazzie*, 2016-NMSC-026, ¶ 20. "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). "In determining whether an officer's suspicion was reasonable, we employ an objective assessment of the officer's actions." *Yazzie*, 2016-NMSC-026, ¶ 20. "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (stating that "the subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts" (internal quotation marks and citations omitted)). "The level of suspicion required for an investigatory stop is considerably less than proof of wrongdoing by a preponderance of the evidence." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted).

**{10}** In this case, Defendant challenges the reasonableness of the stop for two related reasons. First, Defendant argues that Officer Roskos lacked reasonable suspicion to believe he observed the same truck he had attempted to stop the night before. *See Yazzie*, 2016-NMSC-026, ¶ 31 ("Not only must an officer have an objective basis for suspecting that criminal activity is afoot, but the suspicion must also be particularized to the individual who is stopped."). Second, he argues that Officer Roskos lacked particularized suspicion because he did not see the driver of the truck during the chase. We conclude that Defendant's arguments lack merit.

**{11}** With respect to his first challenge, Defendant contends that Officer Roskos's description of the truck that fled from him was not sufficiently similar to Defendant's truck. We disagree. The description during the first encounter was substantially similar with sufficient matching detail, including the color and size of the truck and its unique characteristics—the truck was lifted, had brushed aluminum after-market wheels, and four of the six license plate characters matched what Officer Roskos reported to dispatch during the initial pursuit of the truck. The discrepancies—two of the six license plate characters and the make and model of the truck—are relatively minor when viewed in the context of the other information that did match and, in this case, the discrepancies are easily explained by the difficulties Officer Roskos faced while trying to observe the truck and its partially-obscured license plate during the high-speed chase. In view of this evidence, Officer Roskos's suspicion that he was dealing with the same truck was objectively reasonable. *See Candelaria*, 2011-NMCA-001, ¶ 15 ("The concept of reasonable suspicion has always embraced a certain degree of uncertainty.").

**{12}** Defendant also argues that particularized suspicion was lacking because Officer Roskos had not seen the driver during the first encounter. However, there is no question

that the multiple traffic violations Officer Roskos observed—speeding, driving recklessly, and eluding him—were sufficient to establish the individualized, particularized suspicion required for an ensuing investigative traffic stop. *See Yazzie*, 2016-NMSC-026, ¶ 20 ("A traffic stop is justified at its inception if it is supported by reasonable suspicion that a law has been violated."); *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." (internal quotation marks and citation omitted)). Defendant has not persuaded us, under the facts of this particular case, that it was not objectively reasonable for the same officer to rely on his knowledge of that activity when he encountered the same truck that fled from him again twenty-four hours later. Consequently, after corroborating his suspicion by comparing the truck's license plate information with the information he had relayed to dispatch during the chase, we are satisfied that Officer Roskos had an objectively reasonable basis to conduct a brief investigatory detention to verify or quell his belief that the driver of the truck was the same person who had fled from him the previous night. *See Yazzie*, 2016-NMSC-026, ¶ 18 (" 'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' " (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

**{13}** Under the circumstances presented here, Officer Roskos had an objectively reasonable basis to conduct a brief investigatory detention. Accordingly, we hold that the district court did not err by denying Defendant's motion to suppress.

## II. A *Miranda* Warning Was Not Required Because The Stop Was Not a Custodial Interrogation

**{14}** Next, Defendant argues that the investigatory stop amounted to a custodial interrogation for which *Miranda* warnings were required. "*Miranda* warnings are required when a person is (1) interrogated while (2) in custody." *State v. Wilson*, 2007-NMCA-111, ¶ 12, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted). "[I]n routine traffic stops where the individual is not free to leave but also not 'in custody' pursuant to *Miranda*," the inquiry is "whether a defendant's freedom of action has been restrained to the degree associated with a formal arrest." *Id.* ¶ 22; *see Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 10, 105 N.M. 771, 737 P.2d 552 ("Generally, custodial interrogation does not occur at a traffic stop because of: (1) the routineness of the questions; (2) the generally brief detention; and (3) the fact that such stops are in the public view." (internal quotation marks and citation omitted)). This Court applies an objective test to determine whether a person is in "*Miranda* custody while being interrogated." *Wilson*, 2007-NMCA-111, ¶ 14. "Because the test is objective, the actual subjective beliefs of both the defendant and the officer as to whether the defendant is in custody are irrelevant." *Id.*; *see Armijo*, 1987-NMCA-052, ¶ 6 ("The fact that the motorist may temporarily feel that he is not free to leave does not render him 'in custody' for purposes of *Miranda*."). Instead, "the inquiry is how a reasonable [person] in the

suspect's position would have understood [the] situation." *Wilson*, 2007-NMCA-111, ¶ 14 (internal quotation marks and citations omitted).

**{15}** Defendant asserts the conversation with Officer Roskos was a custodial interrogation for multiple reasons: (1) he could not voluntarily leave the scene because Officer Roskos had parked his patrol unit directly behind Defendant's truck; (2) the questioning lasted between ten and fifteen minutes; and (3) Officer Roskos held his hand on his weapon. Defendant, however, has not demonstrated that any degree of restraint in this case exceeded that of a routine traffic investigation.

**{16}** First, Officer Roskos explained during the hearing that if Defendant had wanted to leave he would have moved his patrol car and allowed him to leave. Nevertheless, even if Officer Roskos's act of blocking Defendant's vehicle could objectively be considered a restraint on Defendant's movement, that alone does not automatically render the restraint unreasonable. "[A] defendant is not typically free to leave during a traffic stop," but that does not "implicate the Fifth Amendment in the same way as custodial interrogations since investigatory detentions are generally public, temporary, and substantially less coercive than custodial interrogations." *State v. Snell*, 2007-NMCA-113, ¶ 12, 142 N.M. 452, 166 P.3d 1106 (internal quotation marks and citation omitted). Defendant has not shown how the restraint in this case exceeded the permissible scope of restraint associated with a routine traffic stop or that the restraint otherwise rose to the degree associated with arrest. *Cf. Wilson*, 2007-NMCA-111, ¶ 35 (holding that a reasonable person in the defendant's position would believe he was restrained to the degree associated with a formal arrest where "the officer used force in order to fully handcuff [the d]efendant, which caused Defendant to drop to his knees, and then the officer placed [the d]efendant in the back seat of the officer's vehicle").

**{17}** Likewise, Defendant has not shown that the duration of the stop in this case—approximately ten minutes—was longer than necessary for Officer Roskos to complete his investigation. *See, e.g., State v. Werner*, 1994-NMSC-025, ¶ 16, 117 N.M. 315, 871 P.2d 971 (holding that under the totality of the circumstances, "the detention of [the defendant] in the locked patrol car over forty-five minutes and probably longer prior to being arrested presented a significant intrusion"). Nor has he provided any authority in support of his argument that Officer Roskos's act of keeping his hand on his weapon transformed the traffic stop into the equivalent of an arrest. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Consequently, Defendant has not demonstrated that the investigatory stop in this case amounted to a custodial interrogation and we conclude *Miranda* warnings were not required.

**CONCLUSION**

**{18}** For the foregoing reasons, we affirm.

**{19}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**