The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date:** October 30, 2023

**STATE OF NEW MEXICO,**

   Plaintiff-Respondent,

v.                                                                    NO. S-1-SC-38642

**JOSE ESPINOZA,**

   Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Conrad F. Perea, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Meryl E. Francolini, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**VARGAS, Justice.**

{1}    Defendant Jose Espinoza was pulled over in his car by a sheriff's deputy

pursuant to a be-on-the-lookout (BOLO) for a stabbing suspect who fled in a grey Honda Civic. Defendant's car was stopped thirty-seven to forty minutes after the BOLO advisement, just one mile from the location of the alleged stabbing. Defendant was eliminated as the suspect, but he was arrested for driving under the influence of alcohol. The district court concluded that the deputy lacked reasonable suspicion to seize Defendant and accordingly granted Defendant's motion to suppress "all evidence . . . obtained as a result of the unlawful search and seizure of Defendant."

{2}    The Court of Appeals reversed the district court. Explaining its holding that the stop was supported by reasonable suspicion, the Court of Appeals concluded that the deputy "reasonably considered that the suspect . . . might hide for a period of time . . . to escape detection." *State v. Espinoza*, A-1-CA-38243, mem. op. ¶ 17 (N.M. Ct. App. Dec. 14, 2020) (nonprecedential). The Court of Appeals reached its conclusion despite the district court's contrary factual finding that the suspect in this case did not hide. The district court's finding that the suspect did not hide is supported by evidence in the record—namely, that the suspect fled. By rejecting the district court's finding that the suspect did not hide, the Court of Appeals misapplied our standard of review. Giving appropriate deference to the district court's factual findings, we conclude under the totality of the circumstances that the deputy lacked

reasonable suspicion under the Fourth Amendment to seize Defendant. We reverse.

**I.      BACKGROUND**

{3}      After receiving reports of a stabbing in Anthony, New Mexico, a BOLO was issued to law enforcement for a suspect described as having neck tattoos and wearing a white shirt. The location of the stabbing was broadcast, as was the name and address of the suspect. The BOLO advised that the suspect fled eastward from the scene of the crime toward the desert in a grey Honda Civic with a damaged front fender and a Texas license plate.

{4}      Pursuant to the BOLO, Deputy Luis Ruiz of the Doña Ana County Sheriff's Office pulled over a silver Honda Civic near the location of the stabbing. That stop did not result in the capture of the suspect.

{5}      Defendant, driving a silver[1] Honda Accord and heading south, passed within sight of the Deputy Ruiz and other officers conducting the stop of the Honda Civic. A sergeant tried to get Defendant's attention, but Defendant did not stop. The sergeant then issued an instruction to stop Defendant's vehicle. Deputy Ruiz got in his patrol car and pursued Defendant with his lights and sirens on. The stop occurred

---

[1]Defendant stipulated that grey—the color of the suspect's car—and silver—the color of his car—are "extremely similar colors" and did not make argument on the basis of any difference in color.

3

thirty-seven to forty minutes after the BOLO was issued. Although Defendant was not the suspect in the stabbing, he smelled of alcohol and was arrested for DWI.

{6} Defendant was convicted of DWI in the magistrate court after the judge denied Defendant's motion to suppress all evidence from the stop. Defendant appealed to the district court for a trial de novo. He again filed a motion to suppress all evidence from the stop, arguing that the warrantless seizure violated both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution because Detective Ruiz lacked reasonable suspicion.

{7} The district court received evidence establishing the following facts. At the time Deputy Ruiz seized Defendant, he knew Defendant's vehicle was a silver Honda, but did not remember whether he knew it was an Accord rather than a Civic. Deputy Ruiz testified that Defendant's car had a Texas license plate. At the time Deputy Ruiz initiated the stop, he did not notice any damage to the front fender as described in the BOLO. Deputy Ruiz testified that that there was not much traffic that night. Asked whether his department was "stopping anything that looked similar to a grey Honda in the pursuit of this suspect," Deputy Ruiz responded, "Yeah, that's what you could say due to the level of crime that had been committed, but of course it was only in a certain area that we were looking for that vehicle. It wasn't all across Doña Ana County."

4

{8}     Relying on his training and experience, Deputy Ruiz also testified that in order to evade capture, suspects in the area sometimes flee to Texas, modify their vehicles by doing things such as changing license plates, and "try to lay low until lights and sirens are completely out and they feel safe that they can actually come out and go on their way to wherever they were planning to go."

{9}     The district court granted Defendant's suppression motion and explained its ruling from the bench.[2] The court agreed with the State that Deputy Ruiz had particularized, well-articulated suspicion. But the district court concluded that the stop was objectively unreasonable. The district court explained that it knew the area and took judicial notice that the distance between the location of the stabbing and the location where Defendant was stopped is one mile. The district court also noted that although the suspect fled east from the stabbing, the road headed in that direction from the location of the stabbing "comes back." The district court stated that making its decision took hours and explained some of its reasoning as follows:

---

[2]The district court did not issue written findings of fact in relation to the motion to suppress, which, although not unusual, *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856 (citing *State v. Gonzales,* 1999-NMCA-027, ¶ 11, 126 N.M. 742, 975 P.2d 355) makes the appellate court's task—reviewing for legal error—"difficult when it does not know what facts were found below" and therefore requires us to employ presumptions. *Gonzales*, 1999-NMCA-027, ¶¶ 12, 15.

I don't quite believe you had reasonable suspicion because of the time frame. . . . I look at these facts and their totality. The facts are good, it's that time factor that bothers me. In a situation where it would have been ten minutes, fifteen minutes, twenty minutes—and I'm not putting time constraints but—that would make it a little more reasonable. Thirty-seven, forty minutes is a little bit unreasonable in my opinion because of the distance . . . . Do I believe this individual may have hidden? No, I don't. I do believe that the time factor was the biggest factor.

{10} The State appealed from the order suppressing evidence, and the Court of Appeals reversed. *Espinoza*, A-1-CA-38243, mem. op. ¶ 1. The Court of Appeals agreed with the district court that Deputy Ruiz had particularized suspicion and then turned to whether the suspicion was objectively reasonable. *Id.* ¶¶ 13-17. The Court of Appeals stated that no evidence in the record supported the district court's belief that the suspect, in the words of the Court of Appeals, "did not hide after fleeing." *Id.* ¶ 14. Crediting the training-and-experience-based testimony of Deputy Ruiz that "suspects often hide until they feel it is safe to continue on their way," *id.* ¶ 15, the Court of Appeals concluded that "Deputy Ruiz reasonably considered that the suspect might hide for a period of time after the stabbing to escape detection," *id.* ¶ 17. Relying on *State v. De-Jesus Santibanez*, 1995-NMCA-017, 119 N.M. 578, 893 P.2d 474, the Court of Appeals concluded that "Defendant's vehicle substantially matched the description provided in the BOLO" and that "it was reasonable for Deputy Ruiz to believe that the suspect . . . might have traveled in a different direction than provided in the BOLO." *Espinoza*, A-1-CA-38243, mem. op. ¶ 17.

6

For these reasons, the Court of Appeals held that Deputy Ruiz had reasonable suspicion to stop Defendant under both the Fourth Amendment and Article II, Section 10. *Espinoza*, A-1-CA-38243, mem. op. ¶ 18.

{11} We granted Defendant's petition for a writ of certiorari to address whether the Court of Appeals correctly applied our standard of review and whether the Court of Appeals was correct to conclude that Deputy Ruiz had reasonable suspicion under the Fourth Amendment and Article II, Section 10.[3]

## II. STANDARD OF REVIEW

{12} A motion to suppress evidence presents a mixed question of fact and law. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. We review each under a different standard, so our inquiry involves two parts.

{13} We review the district court's factual findings deferentially. "[W]e look for substantial evidence to support [each of] the district court's factual finding[s], with deference to the district court's review of the testimony and other evidence presented." *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186.

---

[3]We do not further address Defendant's argument under Article II, Section 10 of the New Mexico Constitution because we hold that Defendant was seized in violation of the Fourth Amendment. *See State v. Garcia*, 2009-NMSC-046, ¶ 13, 147 N.M. 134, 217 P.3d 1032 (stating that if a right is protected under the federal constitution, we do not reach that claim under the New Mexico Constitution).

{14}     Our restraint when reviewing factual findings includes "defer[ence] to the district court's evaluation of witness credibility." *Id.* ¶ 14. It is the responsibility of the district court to assess the credibility of the witnesses and to determine the appropriate weight to give to the evidence. *Id.* "The district court may exercise discretion to credit portions of a witnesses' testimony even though it finds other portions dubious." *Id.* (internal quotation marks and citation omitted). When a "district court does not make explicit credibility findings, we will indulge in all reasonable presumptions in support of the district court's ruling." *Id.* (internal quotation marks and citation omitted).

{15}     We defer also to the inferences drawn by the district court because "[f]actfinding frequently involves selecting which inferences to draw." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M.119, 2 P.3d 856 (internal quotation marks and citation omitted); *see also State v. Martinez*, 2020-NMSC-005, ¶ 15, 457 P.3d 254 ("[I]t is the district court's responsibility to select the factual inferences that shall govern."). "The fact that another district court could have drawn different inferences from the same facts does not mean th[e] district court's findings were not supported by substantial evidence." *Jason L.*, 2000-NMSC-018, ¶ 10. In sum, an appellate court views all facts in the light most favorable to the prevailing party, indulges in all reasonable inferences in support of the ruling of the district court, and

disregards contrary inferences and evidence. *Id.*

{16} Our review of questions of law is straightforward: "the application of the law to the facts is reviewed de novo," including determinations of reasonable suspicion. *State v. Garcia*, 2009-NMSC-046, ¶ 9, 147 N.M. 134, 217 P.3d 1032; *see also State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858 (stating that we review de novo whether a search or seizure was constitutionally reasonable).

## III.   DISCUSSION

## A.   Reasonable Suspicion Under the Fourth Amendment of the United States Constitution

{17} The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Warrantless "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable' subject only to well-delineated exceptions." *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is a brief investigative stop of a person or vehicle that falls short of traditional arrest. *State v. Patterson*, 2006-NMCA-037, ¶¶ 14-15, 139 N.M. 322, 131 P.3d 1286. These brief investigatory stops—colloquially known as *Terry* stops, *see State v. Leyva*, 2011-NMSC-009, ¶ 10, 149 N.M. 435, 250 P.3d 861—comport with the Fourth Amendment if the officer

9

has reasonable and articulable suspicion that "'criminal activity may be afoot.'" *State v. Ketelson*, 2011-NMSC-023, ¶ 15, 150 N.M. 137, 257 P.3d 957 (quoting *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968)).

{18} The Fourth Amendment requires that, under the totality of the circumstances, the detaining officer's suspicion be particularized to the stopped individual and also objectively reasonable. *See Martinez*, 2020-NMSC-005, ¶ 19 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981) ("'Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'")); *Yazzie*, 2016-NMSC-026, ¶¶ 21-36 (analyzing as separate issues whether a traffic stop was supported by particularized suspicion and was objectively reasonable). The touchstone of our reasonable suspicion analysis is that we examine the totality of the circumstances and accordingly avoid reweighing individual factors in isolation. *Martinez*, 2018-NMSC-007, ¶ 12 (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

{19} Reasonable suspicion cannot be based on any facts learned or arising from the encounter but instead must exist at the inception of the seizure. *Jason L.*, 2000-NMSC-018, ¶ 20. "[O]fficers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Neal*, 2007-NMSC-

10

043, ¶ 21 (internal quotation marks and citation omitted). "However, this does not mean that unsupported intuition and inarticulate hunches are sufficient to constitute reasonable suspicion," *id.* (text only) (citation omitted),[4] and an officer who relies on training and experience must "explain *why* [the officer's] knowledge of particular criminal practices gives special significance to the apparently innocent facts observed," *Martinez*, 2020-NMSC-005, ¶ 22 (internal quotation marks and citation omitted). The burden of proving that a warrantless search is reasonable rests on the State. *Rowell*, 2008-NMSC-041, ¶ 10.

**B. The Court of Appeals Erred by Failing to Afford Proper Deference to the Factual Inference Drawn by the District Court That the Suspect Did Not Hide**

{20} When asked what suspects in similar situations have done to "try and hide or get away," Deputy Ruiz testified on the basis of his training and experience that suspects sometimes "try to lay low until lights and sirens are completely out and they feel safe that they can actually come out and go on their way to wherever they were planning to go"; in other words, that suspects sometimes hide.

---

[4]The "(text only)" parenthetical indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

{21} The deputy's testimony is relevant in this case because it could substantiate an inference that it was reasonable to believe that the stabbing suspect in this case might have hidden for thirty-seven to forty minutes after the incident and then fled. But it is for the district court, as factfinder in this suppression action, to decide what factual inferences to draw and whether to accept or reject the deputy's view of the evidence. *Jason L.*, 2000-NMSC-018, ¶ 10 ("Factfinding frequently involves selecting which inferences to draw. . . . [And c]onflicts in the evidence, even within the testimony of a witness, are to be resolved by the fact finder at trial." (internal quotation marks and citation omitted)); *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 (recognizing that the fact finder is free to reject testimony supporting a particular view of the evidence).

{22} And while the district court did not specifically address Deputy Ruiz's testimony that, based on his training and experience, suspects in general may hide, the district court affirmatively rejected any finding or inference that the suspect in this case hid. The district court stated, "Do I believe this individual may have hidden? No, I don't." The district court's findings, including its rejection of the deputy's inference that the stabbing suspect hid, like other factual findings, cannot be disturbed on appeal if the finding is supported by substantial evidence in the record. *See Martinez*, 2018-NMSC-007, ¶ 8 (stating that appellate courts defer to

12

factual findings of the district court that are supported by substantial evidence). Here, the district court's rejection of Deputy Ruiz's testimony is supported by the fact that the suspect fled the scene of the alleged stabbing by automobile. The Court of Appeals erred when it "substitute[d its] judgment of the facts for that of the [district] court." *State v. Aguilar*, 2019-NMSC-017, ¶ 49, 451 P.3d 550; *see also State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72 ("The court should not re-weigh the evidence to determine if there was another hypothesis that would support innocence or replace the fact-finder's view of the evidence with the appellate court's own view of the evidence."). By dismissing the district court's rejection of Deputy Ruiz's testimony in this instance—that suspects sometimes hide—and instead concluding that "Deputy Ruiz reasonably considered that the suspect [may have hidden]," *Espinoza*, A-1-CA-38243, mem. op. ¶ 17, the Court of Appeals misapplied our standard of review.

{23}     We proceed to analyze whether Deputy Ruiz had reasonable suspicion to seize Defendant, and we do so with deference to the district court's rejection of Deputy Ruiz's testimony and its factual finding that the suspect in this case did not hide.

**C.     The Investigatory Stop Was Not Supported by Reasonable Suspicion Under the Fourth Amendment**

{24}     We turn first to whether the investigatory stop was objectively reasonable. *See Yazzie*, 2016-NMSC-026, ¶ 31 (stating that reasonable suspicion requires that an

13

investigatory stop be both objectively reasonable and particularized to the individual seized). In answering this question, we assess the totality of the circumstances, taking care to avoid viewing each individual factor in isolation. *Neal*, 2007-NMSC-043, ¶¶ 21, 28. And the "[r]easonableness of a particular seizure . . . is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interest." *Yazzie*, 2016-NMSC-026, ¶ 22.

{25} The State emphasizes that the suspect allegedly committed a violent crime. That emphasis is well placed. We recognize the legitimate government interest in protecting the public by capturing a suspect who purportedly committed a violent crime. *Cf. State v. Contreras*, 2003-NMCA-129, ¶ 21, 134 N.M. 503, 79 P.3d 1111 (recognizing within the reasonable suspicion analysis "the exigency of the possible threat to public safety that a drunk driver poses"). We also recognize that a brief investigatory traffic stop is a considerably less intrusive seizure than formal arrest. *See id.* (characterizing a brief investigatory traffic stop as a "minimal intrusion").

{26} But reasonable suspicion engages probabilities, *Yazzie*, 2016-NMSC-026, ¶ 33 (stating that although reasonable suspicion does not require absolute certainty, it does require sufficient probability), and the probabilities of this case do not support reasonable suspicion. We first consider that the portion of the description of the car in the BOLO upon which Deputy Ruiz relied—a grey Honda Civic with a Texas

14

license plate—is fairly broad when considered together with his testimony that he did not know whether Defendant's car had front fender damage matching the BOLO and could not remember at what point he realized that Defendant's car, a Honda Accord, did not match the BOLO description for a Honda Civic. The broad nature of the portion of the BOLO relied upon by Deputy Ruiz reduced the probability that a stop based on that description would unearth the suspect. *See* 4 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 9.5(h) (6th ed. 2022) ("Quite obviously, the more the description . . . could apply to only a few persons in the relevant universe, the better the chance of having . . . sufficient grounds to make a stop." (footnote omitted)). The department's decision to "stop[] anything that looked similar to a grey Honda" similarly reduced the probability that the suspect would be located. Indeed, the broad nature of the information relied upon by Deputy Ruiz resulted in his stopping two automobiles pursuant to the BOLO, neither of which contained the suspect, despite the fact that Deputy Ruiz testified that there were not many automobiles on the road.

{27} We also consider the district court's factual finding that the suspect did not hide, as we must, rather than the Court of Appeals' conclusion that it was reasonable for Deputy Ruiz to consider that the suspect may have hidden. *See Martinez*, 2020-NMSC-005, ¶ 15 ("[I]t is the district court's responsibility to select the factual

inferences that shall govern."). We agree with the district court that because the suspect fled in an automobile it is highly improbable that the suspect would still be in the area of the crime, let alone only one mile away from its location after thirty-seven to forty minutes.

{28} None of the cases cited by the State presents a similar enough factual mosaic to guide our totality of the circumstances analysis. In *DeJesus-Santibanez*, for example, the BOLO presented a more specific description of the automobile—a brown 1970 or 1980 GMC or Chevrolet with beige in the middle portion of the vehicle and dark tinted windows—than we have here. 1995-NMCA-017, ¶ 11. And unlike this case, *DeJesus-Santibanez* did not present a problematic relationship between the location and timing of the stop, which is a critical aspect of the case before this Court. *See id.* ¶¶ 12-13 (addressing the fact that the defendant was on a different, lesser travelled route than the BOLO indicated while headed in the same direction, but without addressing the timing of the stop relative to location). The other cases cited by the State are also factually distinguishable. *See, e.g.*, *State v. Lovato*, 1991-NMCA-083, ¶¶ 2-3, 6, 11-12, 112 N.M. 517, 817 P.2d 251 (analyzing whether it was reasonable to seize the defendants where officers were alerted to a late model white Chevrolet Impala that was involved in a drive-by shooting; the defendants were encountered in a fifteen-year-old white Chevrolet Impala minutes

16

after the shooting and near the location of the shooting; the defendants were in the only automobile on the road in the vicinity; and the officer testified that he thought a late model automobile meant that the automobile was an older model); *State v. Watley*, 1989-NMCA-112, ¶¶ 15, 17-18, 109 N.M. 619, 788 P.2d 375 (concluding it was reasonable to seize the defendant driving his truck a short distance from the area of a reported sexual assault when he was the only person on the entire street in the early hours of the morning and someone had reported seeing an individual running down the same street in a ski mask). Indeed, the nature of totality of the circumstances analysis frequently makes it difficult to compare the facts of a given case to another, and the cases cited by Defendant are of little assistance here.

{29} We view the totality of the circumstances at the time Deputy Ruiz seized Defendant through the lens of the district court's factual finding that the suspect did not hide, as our standard of review requires. Based on the passage of thirty-seven to forty minutes and the location of the stop—just one mile from the alleged stabbing—in combination with Deputy Ruiz's testimony that (1) he did not know whether the model of Defendant's car was an Accord or a Civic, (2) he did not know whether Defendant's car had damage to the front fender corresponding with the BOLO description, and (3) his department was "stopping anything that looked similar to a grey Honda" within the area, we conclude that it was not objectively reasonable for

17

Deputy Ruiz to stop Defendant's car. Because reasonable suspicion requires both an objective basis and particularized suspicion, *see Yazzie*, 2016-NMSC-026, ¶ 31, we need not analyze whether Detective Ruiz had particularized suspicion.

## IV.   CONCLUSION

{30}   We hold that Deputy Ruiz lacked reasonable suspicion to stop Defendant under the Fourth Amendment and accordingly reverse the Court of Appeals.

{31}   **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**BRIANA H. ZAMORA, Justice**